UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JEFFREY RICARDO WIMBERLY,

               Plaintiff,

v.

AUDREY STEVENS et al.,

               Defendants.

_____/

Case No. 1:25-cv-1145

Honorable Sally J. Berens

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendants Stevens, Uhaus, Schiebner, and Barnes for failure to state a claim. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Trefil and Brock: (1) Plaintiff's First Amendment claims regarding redress of grievances; (2) Plaintiff's First Amendment access to the courts claims; (3) Plaintiff's Fourth and Eighth Amendment claims against Defendant Trefil regarding the strip search; (4) Plaintiff's Fourteenth Amendment due process claims; (5) Plaintiff's civil conspiracy claim; (6) Plaintiff's official capacity claims; and (7) Plaintiff's claim for intentional infliction of emotional distress against Defendant Trefil. Plaintiff's personal capacity First Amendment retaliation claims against Defendants Trefil and Brock remain in the case.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

<u>Discussion</u>

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. The events about which he complains occurred there. Plaintiff sues the following MCF personnel in their official and personal capacities: Warden James Schiebner, Grievance Coordinator Unknown Barnes, Captain Unknown Trefil, Lieutenant Unknown Brock, and Correctional Officers Audrey Stevens and Unknown Uhaus. (Compl., ECF No. 1, PageID.2.)[2]

Plaintiff alleges that on June 11, 2025, Defendant Stevens conducted a search of Plaintiff's cell. (*Id.*) Defendant Stevens emerged from Plaintiff's cell holding Plaintiff's "memory equipped Swintec typewriter" 20 to 30 minutes later. (*Id.*) Backup officers arrived, and Plaintiff and his cellmate were handcuffed and taken to segregation. (*Id.*) Both Plaintiff and his cellmate "were immediately reclassified to administrative segregation, and removed from the general population manifest." (*Id.*)

While in segregation, Plaintiff was strip searched by Defendant Uhaus. (*Id.*) Plaintiff claims that during the search, Defendant Uhaus's "body camera was filming[,] and he made no attempts to turn it off even after complaints." (*Id.*, PageID.3.) After the search, Plaintiff 'was held in segregation over the next 20 hours without an explanation." (*Id.*) On June 12, 2025, Plaintiff submitted a request for Defendant Stevens's body camera footage. (*Id.*) After Plaintiff gave his

---

[2] In the caption of his complaint, Plaintiff has stated "MDOC PERSONNEL" before listing the Defendants named above. (Compl., ECF No. 1, PageID.1.) Plaintiff, however, does not list "MDOC Personnel" or any unknown individuals with the list of Defendants in his complaint. (*Id.*, PageID.2.) The Court, therefore, does not construe "MDOC PERSONNEL" to refer to any unknown parties but instead to reference the fact that the Defendants named above are employed by the MDOC. The Court will direct the Clerk to terminate Unknown Parties #1 as a Defendant in this action.

request to non-party Officer Corey, and also requested Officer Corey's body camera footage for "assurance," Plaintiff and his cellmate were released from segregation. (*Id.*)

When Plaintiff and his cellmate returned to their cell, they "noticed their cell was trashed and both their typewriters and Jpay 6 [t]ablets were missing." (*Id.*) Other inmates told Plaintiff and his cellmate that they had seen Defendant Stevens return to the unit and dismantle Plaintiff's typewriter. (*Id.*)

On June 13, 2025, Plaintiff and his cellmate approached non-party Resident Unit Manager (RUM) Sellers "concerning their missing property and classification to segregation." (*Id.*) Non-party Counselor Nesbitt was present, and both Sellers and Nesbitt told Plaintiff and his cellmate that they had seen their property "in garbage bags up front in [Defendant] Trefil's office." (*Id.*) Sellers and Nesbitt "alleged [Defendant] Trefil had 'chewed out' [Defendant] Sevens for not filing paperwork." (*Id.*, PageID.4.) Plaintiff and his cellmate asked for their property and were told to come back later. (*Id.*) That afternoon, Plaintiff and Sellers "found the property in the contraband locker in 1 Unit." (*Id.*) Sellers "said he could not return the property until some paperwork show[ed] up." (*Id.*) Plaintiff filed his first grievance about the incident that night. (*Id.*)

On June 16, 2025, Defendant Stevens was working in Plaintiff's unit. (*Id.*) That night, she returned a Jpay tablet and manual typewriter to Plaintiff's cellmate. (*Id.*) "Plaintiff was handed his Jpay 6 tablet and a contraband slip as his typewriter sat on the desk in front of [Defendant] Stevens, in pieces, with wires ripped out." (*Id.*) That night, Plaintiff was called to the control center to be heard on a misconduct ticket written by Defendant Stevens for destruction of state property. (*Id.*) Non-party Lieutenant Helder "noticed . . . too many errors in the body of the misconduct." (*Id.*) Helder dismissed the misconduct and told Plaintiff that he "would leave [a] note to have the

typewriter returned to [Plaintiff] in the morning." (*Id.*) Plaintiff requested Helder's body camera footage. (*Id.*)

On June 17, 2025, Plaintiff was called to Defendant Trefil's office, where he saw a typewriter sitting on the desk. (*Id.*) Plaintiff alleges that the typewriter "was broken even more severely, with a prop made to look like some sort of alteration sitting on the circuit board instead of the keyboard." (*Id.*) Defendant Brock was also present. (*Id.*) Defendant Trefil told Plaintiff to sign a Notice of Intent (NOI) to have the typewriter destroyed. (*Id.*) Plaintiff refused, telling Defendants Trefil and Brock that the typewriter had not been in that condition until Defendant Stevens broke it apart. (*Id.*, PageID.4–5.) Defendant Brock then claimed responsibility for destroying the typewriter. (*Id.*, PageID.5.) Defendant Trefil "interjected and said he was the one who ordered [D]efendant Stevens to go into [P]laintiff's cell, seize his property, and it was he who had [P]laintiff classified to segregation and strip searched against MDOC policy and procedure." (*Id.*)

Plaintiff asked to have the print wheel and ribbon from the typewriter returned to him. (*Id.*) Defendant Trefil responded "only if [Plaintiff] signed the NOI." (*Id.*) Plaintiff "insisted it was his property. Defendant Trefil responded that it would all be thrown out unless he signs." (*Id.*) Feeling under duress, Plaintiff signed the NOI "as 'without prejudice.'" (*Id.*) Defendant Trefil became agitated and said, "So that's what you are going to do?" (*Id.*) Defendant Trefil then took back the print wheel and ribbon, threatened Plaintiff with misconducts, and said that "he would go back into [P]laintiff's cell and take his Jpay 6 tablet, inferring he knew that's where [P]laintiff kept his copies of his legal drafts." (*Id.*) Plaintiff notes that he is "serving an indeterminate sentence and is in current litigation on a Writ for Certiorari." (*Id.*) Plaintiff's "[f]ederal [h]abeas corpus petition/6.500 motion for relief from judgment is due on October 25, 2025." (*Id.*) Plaintiff avers

that his memory-equipped typewriter held his legal drafts, and that such a typewriter can no longer be purchased or replaced. (*Id.*) Plaintiff alleges that he "desperately needs his typewriter and [D]efendant Trefil is cognizant of this fact." (*Id.*) Defendant Trefil told Plaintiff to "pass the threat to his cellmate Mr. Williams, that he is coming for his typewriter and Jpay tablet as well." (*Id.*)

Plaintiff avers that shortly thereafter, around 3:00 p.m., Defendant Trefil "was true to his word" and ordered Defendant Brock to write a misconduct for contraband. (*Id.*) The misconduct was "falsified/backdated to April 30, 2025, two months before the incident." (*Id.*) However, the misconduct "was allowed to expire." (*Id.*, PageID.6.) Plaintiff submitted a grievance about "this retaliatory act." (*Id.*)

In late June of 2025, Plaintiff submitted a kite to Defendant Schiebner "concerning his unreasonable classification to segregation, the confiscation of his typewriter and legal briefs contained therein, the conduct of the officers at his facility, and what to do about the rejection of his grievances." (*Id.*) Plaintiff claims that Defendant Schiebner "turned a blind eye to [P]laintiff's request for direction." (*Id.*) On July 2, 2025, Defendant Schiebner ordered Defendant Barnes to place Plaintiff on "MDOC wide grievance restriction." (*Id.*)

At some point in July of 2025, "while turning in expedited legal mail, RUM Sellers asked [P]laintiff about his typewriter situation and/or was it returned?" (*Id.*, PageID.9.) Plaintiff explained "that he had heard nothing and his typewriter was still out of his possession." (*Id.*, PageID.10.) Sellers told Plaintiff that he had witnessed Helder tell Defendant Trefil "to return the typewriter after he dismissed the misconduct written by [Defendant] Stevens." (*Id.*)

Based upon the foregoing, Plaintiff indicates that he is asserting the following claims for relief: (1) First Amendment claims regarding the right to redress grievances, access the court, and to be free from retaliation; (2) Fourth and Eighth Amendment claims regarding the recorded strip

search; (3) Fourteenth Amendment due process claims; (4) a civil conspiracy claim; (5) claims regarding violations of MDOC policies and procedures; and (6) state law claims for intentional infliction of emotional distress. (*Id.*, PageID.8, 10–12.) Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (*Id.*, PageID.12–14.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

### A.     Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### 1.     First Amendment Claims

#### a.     Redress of Grievances and Placement on Grievance Restriction

In his complaint, Plaintiff suggests that Defendants Brock and Trefil violated his First Amendment right to have his grievances redressed. (Compl., ECF No. 1, PageID.11.) Plaintiff's complaint can also be construed to assert First Amendment redress of grievances claims against Defendants Barnes and Schiebner given Plaintiff's allegations regarding their handling of the grievances he submitted to them and their placement of Plaintiff on grievance restriction.

The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minnesota State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond). Moreover, Plaintiff has not been barred from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563

9

F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).

Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio*, 20 F. App'x 469, 470–71 (6th Cir. 2001).

Finally, Plaintiff's placement on grievance restriction did not violate his First Amendment rights. Placement on modified access does not prohibit an inmate from utilizing the grievance process. *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445–47 (6th Cir. 2005); *Corsetti v. McGinnis*, 24 F. App'x 238, 241 (6th Cir. 2001). The inmate may still request a grievance form and, if the form is provided, submit grievances to the grievance coordinator, who reviews the grievance to determine whether it complies with institutional rules regarding the filing of grievances. *See* MDOC Policy Directive 03.02.130 ¶ SS (eff. Oct. 21, 2024). Moreover, if a prisoner submits a grievance obtained from a source other than the Step-I grievance coordinator,

the grievance coordinator may reject the grievance, in accordance with ¶ P of the policy. *Id.* ¶¶ P(3), SS. As with any grievance rejection under ¶ P, the prisoner may appeal the rejection to the next step of the grievance process. *Id.* ¶ O. There is nothing constitutionally improper about this review process for a prisoner who has demonstrated an inability to properly utilize the grievance process in the past.

Accordingly, for all of the foregoing reasons, Plaintiff's First Amendment claims against Defendants Brock, Trefil, Barnes, and Schiebner concerning the redress of his grievances and placement on grievance restriction will be dismissed.

### b.    Retaliation

Plaintiff next asserts First Amendment retaliation claims against Defendants Brock and Trefil. (Compl., ECF No. 1, PageID.11.) Plaintiff suggests that Defendants Brock and Trefil retaliated against Plaintiff for filing grievances and refusing to sign off on the NOI to throw away Plaintiff's typewriter by threatening Plaintiff with misconducts, suggesting that Plaintiff's Jpay tablet would be confiscated, and ultimately issuing a misconduct charging Plaintiff with possession of contraband. (*Id.*, PageID.5–6.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

In his complaint, Plaintiff alleges that he filed his first grievance regarding the confiscation of his typewriter on June 13, 2025. (Compl., ECF No. 1, PageID.3–4.) Four days later, on June 17, 2025, Plaintiff was called to Defendant Trefil's office. (*Id.*, PageID.4.) Defendant Brock was

present, and Defendant Trefil told Plaintiff to sign the NOI to destroy Plaintiff's typewriter. (*Id.*) Plaintiff refused. (*Id.*) Ultimately, under duress, Plaintiff signed the NOI "without prejudice." (*Id.*, PageID.5.) Defendant Trefil threatened Plaintiff with misconducts and confiscation of his Jpay tablet. (*Id.*) Later that day, Defendant Trefil ordered Defendant Brock to write Plaintiff a misconduct for possession of contraband. (*Id.*)

Taking Plaintiff's allegations as true and in the light most favorable to him, the Court will not dismiss Plaintiff's First Amendment retaliation claims against Defendants Trefil and Brock on initial review.

### c.    Access to the Courts

Plaintiff next suggests that Defendants Trefil and Brock violated Plaintiff's First Amendment rights to access the courts. (Compl., ECF No. 1, PageID.11.) Plaintiff bases these claims on his allegations that: (1) Defendant Brock claimed responsibility for destroying Plaintiff's typewriter, (2) Defendant Trefil refused to give Plaintiff the print wheel and ribbon from the typewriter, (3) Defendant Trefil threatened to take Plaintiff's Jpay tablet to deprive him of access to his legal drafts, and (4) Defendant Trefil knew that Plaintiff needed his typewriter to meet legal deadlines. (Compl., ECF No. 1, PageID.5.)

To state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992). In other words, a plaintiff must plead that the defendants' actions have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391. Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

With respect to the first element, Plaintiff states that he is "serving an indeterminate sentence and is in current litigation on a Writ for Certiorari." (Compl., ECF No. 1, PageID.5.) Plaintiff suggests further that his federal habeas corpus petition and/or motion for relief from judgment pursuant to Michigan Court Rules 6.500 *et seq.* are due on October 25, 2025. (*Id.*) In light of these allegations, Plaintiff has sufficiently alleged facts suggesting that the underlying causes of actions are ones contemplated by *Bounds* and *Lewis.*

Plaintiff, however, has not set forth facts from which the Court could infer that any of these underlying causes of action assert non-frivolous claims for relief. *See Lewis*, 518 U.S. at 353;

*Hadix*, 182 F.3d at 405. Plaintiff's complaint lacks any allegations regarding the grounds for relief he is pursuing or seeks to pursue.

Likewise, Plaintiff's complaint has no allegations regarding any lost remedy. Public records reflect that in 2020, the Michigan Court of Appeals affirmed Plaintiff's convictions of two counts of first-degree criminal sexual conduct involving force and the aid of an accomplice, in violation of Mich. Comp. Laws § 750.520b(1)(d)(*ii*), but concluded that Plaintiff was entitled "to a remand for resentencing under *People v. Beck*, 504 Mich. 605; 939 N.W.2d 213 (2019)." *See People v. Wimberly*, No. 342751, 2020 WL 6936115, at *1 (Mich. Ct. App. Nov. 24, 2020).[3] The Michigan Supreme Court denied leave to appeal on April 15, 2022, *see People v. Wimberly*, 972 N.W.2d 52 (Mich. 2022), and denied reconsideration on June 28, 2022, *see People v. Wimberly*, 975 N.W.2d 476 (Mich. 2022). The United States Supreme Court denied Plaintiff's petition for a writ of certiorari on November 21, 2022. *See Wimberly v. Michigan*, 143 S. Ct. 452 (2022).

After the trial court conducted Plaintiff's resentencing, Plaintiff again appealed to the Michigan Court of Appeals. That court affirmed Plaintiff's sentences. *See People v. Wimberly*, No. 356052, 2022 WL 17171832, at *1 (Mich. Ct. App. Nov. 22, 2022). Subsequently, however, on

---

[3] When assessing whether a complaint states a claim, the Court is generally limited to the allegations of the complaint. However, that general limitation is not entirely inflexible. The Sixth Circuit Court of Appeals has "taken a liberal view of what matters fall within the pleadings for purposes of [determining whether a complaint states a claim.]" *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001). Thus:

> If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings. At this preliminary stage in litigation, courts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.

*Id.* (citation omitted); *see also Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008). Accordingly, this Court may take judicial notice of proceedings in other courts of record. *Chase v. MaCauley*, 971 F.3d 582, 587 n.1 (6th Cir. 2020).

October 25, 2024, the Michigan Supreme Court, in lieu of granting Plaintiff's application for leave to appeal, vacated the court of appeals' judgment and remanded the matter to the Calhoun County Circuit Court "for an amendment of the judgment of sentence to reflect concurrent sentencing." *See People v. Wimberly*, 12 N.W.3d 383 (Mich. 2024). The supreme court noted that the imposition of consecutive sentencing violated the "ex post facto provisions of the United States and Michigan Constitutions" because Plaintiff had committed his crimes before the Michigan legislature amended the pertinent statute to authorize consecutive sentencing. *See id.* The supreme court denied leave to appeal in all other respects. *See id.* Plaintiff again sought a writ of certiorari from the United States Supreme Court. The Supreme Court denied that petition on October 14, 2025. *See* Oct. 14, 2025, Order List, https://www.supremecourt.gov/orders/ordersofthecourt/ (select the link for the Order List for October 14, 2024, and then scroll to page 5 to find Case No. 25-5321, *Wimberly v. Michigan*).

Contrary to Plaintiff's assertion, he does not have a deadline within which to file a motion for relief from judgment pursuant to Michigan Court Rule 6.502, as that rule does not specify when such a motion must be filed. Furthermore, in light of the fact that the United States Supreme Court denied Plaintiff's petition for a writ of certiorari on October 14, 2025, his one-year limitations period to file a federal habeas corpus petition has just now started to run. Petitioner, therefore, has until October 14, 2026, to file a timely section 2254 petition challenging his convictions and sentences. *See* 28 U.S.C. § 2244(d)(1)(A). If Plaintiff files a properly-filed Rule 6.502 motion within that one-year period, he could be entitled to tolling of the limitations period for the time during which his Rule 6.502 motion remains pending before the state courts. *See id.* § 2244(d)(2).

In light of the foregoing, Plaintiff has not shown that Defendants Trefil and Brock's actions have caused him to lose any remedy, as Plaintiff still has time to file both a Rule 6.502 motion and

a timely section 2254 petition. Accordingly, Plaintiff's First Amendment access to the courts claims will be dismissed.

### 2.    Fourth and Eighth Amendment Claims

Plaintiff next avers that Defendant Uhaus violated Plaintiff's Fourth and Eighth Amendment rights by keeping his body camera on record mode when he conducted a strip search of Plaintiff. (Compl., ECF No. 1, PageID.11.) Plaintiff suggests further that Defendant Trefil directed Defendant Uhaus to do so "in a malicious manner to cause harm and humiliation." (*Id.*)

As an initial matter, to the extent that Plaintiff believes Defendants Uhaus and Trefil violated his rights under the Eighth Amendment, the United States Court of Appeals for the Sixth Circuit has held that an Eighth Amendment claim regarding a strip search is not cognizable when the plaintiff has not alleged any physical injury from the strip search. *See Jackson v. Herrington*, 393 F. App'x 348, 354 (6th Cir. 2010); *Harden–Bey v. Rutter,* 524 F.3d 789, 795 (6th Cir. 2008)). Here, Plaintiff does not allege that he sustained any physical injury as a result of the officers' actions.

Moreover, to the extent that Plaintiff contends that the recording of the strip search constituted a violation of his bodily privacy, the facts alleged by Plaintiff do not rise to the level of Fourth or Eighth Amendment violations. The Sixth Circuit has held that employing a camera to document the lawful strip search of an inmate does not violate either the Fourth or Eighth Amendments. *See Hubbert v. Myers*, No. 92-1232, 1993 WL 326707 at *1 (6th Cir. Aug. 26, 1993) (affirming summary judgment against a plaintiff who alleged that the defendants conducted a strip search which was videotaped by a female employee); *see also McGibbon v. Stephenson*, No. 2:22-CV-12167, 2023 WL 8543146, at *3 (E.D. Mich. Dec. 11, 2023) ("The law is clear that the mere act of videorecording a strip search does not violate an inmate's constitutional rights."); *Sanchez v. Bauer*, No. 14-CV-02804-MSK-KLM, 2015 WL 5026195, at *6 (D. Colo. Aug. 26, 2015)

(finding allegation that the plaintiff was "video recorded" while he was strip searched failed to state a Fourth Amendment claim); *Smith v. City of N.Y.*, No. 14 Civ. 5934(JCF), 2015 WL 3929621, at *2 (S.D.N.Y. June 17, 2015) (recognizing that "neither the presence of cameras nor the presence of other inmates and employees of a correctional facility makes an otherwise constitutional strip search unconstitutional"); *Peek v. City of N.Y.*, No. 13-cv-4488 (AJN), 2014 WL 4160229, at *2 (S.D.N.Y. Aug. 18, 2014) (dismissing a Fourth Amendment claim based on a strip search in front of a camera because "[w]ithout more . . . the presence of a camera at a strip search does not amount to a constitutional violation").

Here, Plaintiff alleges no facts regarding the nature of the strip search other than to state that Defendant Uhaus's body camera was on during the search and Defendant Uhaus "made no attempt to turn it off even after complaints." (Compl., ECF No. 1, PageID.3.) Plaintiff further suggests, in a conclusory manner, that Defendant Trefil ordered Defendant Uhaus to do this "in a malicious manner to cause harm and humiliation." (*Id.*, PageID.11.) However, because the mere act of recording a strip search does not violate the Fourth and Eighth Amendment, the Court will dismiss Plaintiff's Fourth and Eighth Amendment claims against Defendants Uhaus and Trefil.

### 3.    Fourteenth Amendment Due Process Claims

#### a.    Misconduct Proceedings and Placement in Segregation

Plaintiff suggests that Defendants Stevens and Trefil violated his Fourteenth Amendment due process rights by issuing him a false misconduct for destruction of state property and by classifying Plaintiff to segregation. (Compl., ECF No. 1, PageID.10–11.) Plaintiff's complaint can also be construed to assert Fourteenth Amendment due process claims against Defendants Brock and Trefil for issuing Plaintiff a misconduct ticket for contraband. (*Id.*, PageID.5.)

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005).

17

To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient" *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

As set forth above, Lieutenant Helder dismissed the misconduct ticket for destruction of state property. (Compl., ECF No. 1, PageID.4.) Moreover, Plaintiff states that the misconduct ticket for contraband expired. (*Id.*, PageID.5–6.) The Court notes that there is "no constitutional right to be free from false accusations of misconduct." *Jackson v. Hamlin*, 61 F. App'x 131, 132 (6th Cir. 2003). "Due process of law requires only that the person have the opportunity to convince an unbiased decision maker that he has been wrongly or falsely accused or that the evidence against him is false." *Onumonu v. Mich. Dep't of Corr.*, No. 1:21-cv-33, 2021 WL 972809, at *3 (W.D.

Mich. Mar. 16, 2021); *see also Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *2 (6th Cir. Mar. 31, 2017) (agreeing that an inmate's misconduct proceedings did not implicate a protected liberty interest because he was found not guilty); *Barlow v. Dominguez*, No. 98-2414, 1999 WL 1045174, at *1 (6th Cir. Nov. 9, 1999) (noting that the inmate's "due process rights were protected when, at an administrative hearing concerning the ticket, [the inmate] was found not guilty and the ticket was dismissed").

Moreover, Plaintiff's short stay in segregation does not amount to a "significant and atypical deprivation." Plaintiff indicates that after Defendant Stevens confiscated his typewriter, he was reclassified to administrative segregation, where he was held for 20 hours. (Compl., ECF No. 1, PageID.2–3.) However, confinement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).

MDOC Policy Directive 04.05.120 identifies three types of segregation used by the MDOC: temporary segregation, administrative segregation, and punitive segregation. *See* MDOC Policy Directive 04.05.120, ¶¶ M–Z (eff. June 1, 2019). Temporary segregation "is used when it is necessary to move a prisoner from general population (e.g., pending a hearing for a Class I misconduct violation, classification to administrative segregation, pending an investigation, transfer, etc.)." *See id.* ¶ M. Punitive segregation, on the other hand, is used "only [for an inmate] to serve a detention sanction for a Class I misconduct as ordered by an ALJ." *Id.* ¶ Z.

In *Sandin*, the Supreme Court concluded that disciplinary segregation for 30 days did not impose an atypical and significant hardship. *See Sandin*, 515 U.S. at 484. A stay in segregation is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey*, 524 F.3d at 794. The United States Court of Appeals for the Sixth Circuit has concluded that a stay longer than 30 days in segregation is not necessarily considered an atypical or significant hardship, *see Joseph*, 410 F. App'x at 868; *see also, e.g.*, *Jones v. Baker*, 155 F.3d 810, 812–23 (6th Cir. 1998) (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest). In light of the foregoing, considering that placement in disciplinary and administrative segregation for relatively short periods of time do not qualify as atypical or significant, Plaintiff's stay in segregation for 20 hours cannot rise to the level of atypical or significant as contemplated by *Sandin*.

In sum, Plaintiff's Fourteenth Amendment procedural due process claims related to the receipt of the misconducts and placement in segregation will be dismissed for failure to state a claim.

### b.    Deprivation of Property

Plaintiff faults Defendants Stevens and Trefil for violating his Fourteenth Amendment due process rights when they confiscated and destroyed his typewriter. (Compl., ECF No. 1, PageID.10–11.) Such claims, however, are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his section 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate. Plaintiff has available to him numerous state post-deprivation remedies. The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff fails to allege any reasons why a state-court action would not afford him complete relief for the deprivations, either negligent or intentional, of his personal property.

Accordingly, the Court will dismiss Plaintiff's Fourteenth Amendment due process claims against Defendants Stevens and Trefil premised upon the deprivation of Plaintiff's typewriter.

### c.      Handling of Grievances

As set forth above, Plaintiff takes issue with Defendant Barnes's handling of Plaintiff's grievances, suggesting that Barnes focused on alleged procedural errors rather than the merits. (Compl., ECF No. 1, PageID.11.) Plaintiff also alleges that Defendant Schiebner ordered Defendant Barnes to place Plaintiff on grievance restriction. To the extent that Plaintiff claims that Defendants Barnes and Schiebner violated his Fourteenth Amendment due process rights, the courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt*, 459 U.S. at 467; *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Moreover, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, 19 F.3d 1435 (6th Cir. 1994). Accordingly, Plaintiff cannot state a Fourteenth Amendment due process claim against Defendants Barnes and Schiebner premised upon their handling of Plaintiff's grievances and placement of Plaintiff on grievance restriction.

### d.      Violations of MDOC Policies and Procedures

Plaintiff suggests that Defendants Trefil and Brock violated his due process rights by violating various MDOC policies and procedures regarding inmates' personal property and placement in segregation. (Compl., ECF No. 1, PageID.8.)

As an initial matter, claims under section 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*,

457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertions that Defendants Trefil and Brock violated the MDOC's policies fail to state a claim under section 1983.

Additionally, "[w]ithout a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim*, 461 U.S. at 250; *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001). Thus, Plaintiff's allegation that Defendants Trefil and Brock violated MDOC policy fails to raise a cognizable federal claim.

Accordingly, Plaintiff's section 1983 claims regarding alleged violations of MDOC policy and procedure will be dismissed for failure to state a claim.

### e.    Claims against Defendant Schiebner in his Supervisory Capacity

Finally, Plaintiff alleges that Defendant Schiebner violated Plaintiff's due process rights by "attempt[ing] to cover up the unconstitutional actions of his subordinates." (Compl., ECF No. 1, PageID.12.)

Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *See Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

Moreover, section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995).

Here, Plaintiff fails to allege facts suggesting that Defendant Schiebner encouraged or condoned the conduct of the other Defendants, or authorized, approved, or knowingly acquiesced in that conduct. Plaintiff fails to set froth any allegations that Defendant Schiebner "either encouraged the specific incident[s] of misconduct or in some other way directly participated in [them]." *Peatross*, 818 F.3d at 242 (quoting *Shehee*, 199 F.3d at 300). Plaintiff suggests only that Defendant Schiebner rejected his grievances and had him placed on grievance restriction. As discussed above, those actions are insufficient to establish liability under section 1983.

Accordingly, for the foregoing reasons, Plaintiff's Fourteenth Amendment due process claims against Defendant Schiebner premised upon his supervisory position as Warden will be dismissed.

### 4.    Civil Conspiracy Claim

Plaintiff contends that Defendants Brock and Trefil conspired to violate Plaintiff's First Amendment rights to free speech, to redress grievances, to access the courts, and to be free from retaliation. (Compl., ECF No. 1, PageID.11.)

A civil conspiracy under section 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565-66 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Here, although Plaintiff claims that Defendant Trefil ordered Defendant Brock to issue a misconduct to Plaintiff for contraband, and that Defendant Brock was present in Defendant Trefil's office on June 17, 2025, and falsely claimed responsibility for destroying the typewriter, Plaintiff does not allege that any "agreement" or "plan" existed between Defendants Trefil and Brock. (*See generally* Compl., ECF No. 1.) Instead, Plaintiff's allegations of conspiracy are wholly conclusory. Plaintiff's subjective belief and personal interpretation of what occurred, without supporting facts, are insufficient to show that Defendants Trefil and Brock engaged in a conspiracy. Moreover, that Defendants Trefil and Brock both took allegedly adverse actions against Plaintiff does not, on its

25

own, show that they engaged in a conspiracy. As the Supreme Court has held, such allegations, while hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556–57. Instead, the Supreme Court has recognized that, although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Accordingly, because Plaintiff does not allege *facts* to show an agreement among Defendants Trefil and Brock, Plaintiff fails to state a plausible section 1983 civil conspiracy claim.

### 5.    Official Capacity Claims

The Court has concluded that Plaintiff may proceed upon his First Amendment retaliation claims against Defendants Trefil and Brock. The Court must now consider whether Plaintiff can proceed on his official capacity claims against Defendants Trefil and Brock as well.

A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments, such as the MDOC, are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). And, regardless, the State of Michigan (acting through the MDOC) is not a "person" who may be sued

under section 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013).

Here, Plaintiff seeks compensatory and punitive damages. (Compl., ECF No. 1, PageID.13–14.) However, as noted above, the MDOC is not a "person" who may be sued under section 1983 for money damages. *See, e.g.*, *Lapides*, 535 U.S. at 617. Similarly, Plaintiff may not seek monetary damages against Defendants Trefil and Brock in their official capacities. *Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.").

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking prospective injunctive or declaratory relief is not treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Ex parte Young*, 209 U.S. 123, 159– 60 (1908)). The *Ex parte Young* doctrine "rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Virginia Ofc. for Prot. and Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (internal citation omitted.") The Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Plaintiff seeks declaratory relief against Defendants Trefil and Brock. (Compl., ECF No. 1, PageID.12–13.) But the actions that he claims support that relief are not ongoing violations. Each declaration that Plaintiff seeks is a declaration that Defendants did something in the past. (*Id.*) These requests for relief do not fit within the exception. Plaintiff has failed to state a viable

official capacity claim against Defendants Trefil and Brock.[4] Accordingly, the Court will dismiss Plaintiff's official capacity claims against Defendants Trefil and Brock in their entirety.

### B.    State Law Claim for Intentional Infliction of Emotional Distress

Plaintiff suggests that Defendant Trefil intentionally inflicted emotional distress upon Plaintiff by conspiring with Defendant Brock, directing Defendant Stevens to confiscate Plaintiff's property, directing Defendant Uhaus to record the strip search, and by retaliating against Plaintiff. (Compl., ECF No. 1, PageID.11.)

In Michigan,

> "[t]o establish a claim of intentional infliction of emotional distress, a plaintiff must prove the following elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Hayley v. Allstate Ins Co*, 262 Mich. App. 571, 577, 686 N.W.2d 273 (2004) (quotation marks and citation omitted). "The conduct complained of must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* (quotation marks and citation omitted). "It is for the trial court to initially determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Id.*

*Kosch v. Traverse City Area Pub. Schools*, --- N.W.3d ---, 2024 WL 3907351, at *14 (Mich. Ct. App. Aug. 22, 2024). Here, Plaintiff's complaint lacks facts from which this Court could infer that Defendant Trefil's conduct rose to the level of "extreme and outrageous," nor does Plaintiff set forth any facts regarding the severe emotional distress that he allegedly suffered. Quite simply, the Court cannot conclude that Defendant Trefil's conduct exceeded "all possible bounds of decency"

---

[4] Plaintiff seeks prospective injunctive relief against Defendant Schiebner. (Compl., ECF No. 1, PageID.13.) But, for the reasons stated above, Plaintiff has failed to state a claim against Defendant Schiebner. Moreover, although the injunctive relief Plaintiff seeks is prospective, it seeks to remedy past harm, not any ongoing violation. Thus, Plaintiff has failed to state a viable official capacity claim for injunctive relief.

from the facts set forth in Plaintiff's complaint. The Court, therefore, will dismiss Plaintiff's claim of intentional infliction of emotional distress.

**<u>Conclusion</u>**

The Court will grant Plaintiff leave to proceed *in forma pauperis*. The Court will also direct the Clerk to terminate Unknown Parties #1 as a Defendant in this action. Moreover, having conducted the review required by the PLRA, the Court will dismiss Plaintiff's complaint against Defendants Stevens, Uhaus, Schiebner, and Barnes for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Trefil and Brock: (1) Plaintiff's First Amendment claims regarding redress of grievances; (2) Plaintiff's First Amendment access to the courts claims; (3) Plaintiff's Fourth and Eighth Amendment claims against Defendant Trefil regarding the strip search; (4) Plaintiff's Fourteenth Amendment due process claims; (5) Plaintiff's civil conspiracy claim; (6) Plaintiff's official capacity claims; and (7) Plaintiff's claim for intentional infliction of emotional distress against Defendant Trefil. Plaintiff's personal capacity First Amendment retaliation claims against Defendants Trefil and Brock remain in the case.

An order consistent with this opinion will be entered.

Dated:   <u>October 21, 2025</u>                     <u> /s/ Sally J. Berens</u>
                                                       SALLY J. BERENS
                                                       United States Magistrate Judge